## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

**WAYLON GORDON**                                                      **PLAINTIFF**

**v.**                        **No. 5:13CV00043 SWW/JTR**

**CAROLYN W. COLVIN,** *Acting Commissioner*,
**SOCIAL SECURITY ADMINISTRATION**                       **DEFENDANT**

### Instructions for Recommended Disposition

The following recommended disposition was prepared for U.S. District Judge Susan W. Wright.  A party to this dispute may file written objections to this recommendation.  An objection must be specific and state the factual and/or legal basis for the objection.  An objection to a factual finding must identify the finding and the evidence supporting the objection.  Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1]  The objecting party must serve the opposing party with a copy of an objection.  Failing to object within 14 days waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Wright may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

## Recommended Disposition

Waylan Don Gordon seeks judicial review of the denial of his application for disability benefits.[3]  Gordon last worked in July 2009 installing alarm systems.[4]  He can no longer do that work because he has neurocardiogenic syncope, but he maintains his symptoms prevent him from doing any work.  He claims he has been disabled since age 41.

**The Commissioner's decision**.  After considering the application, the Commissioner's ALJ determined Gordon has severe impairments — neurocardiogenic syncope, hypertension, and bradycardia[5] — but he can so some light work.[6]  Because a vocational expert identified available light work,[7] the ALJ denied the application.[8]  Gordon then asked the Commissioner's Appeals Council to review the ALJ's decision.[9]

The Appeals Council found that the ALJ had failed to specify the weight given

---

[3]SSA record at pp. 148 & 150.

[4]*Id*. at pp. 40, 172, 182 & 210.

[5]*Id*. at p. 20.

[6]*Id*. at p. 21.

[7]*Id*. at pp. 73-74.

[8]*Id*. at p. 28.

[9]*Id*. at p. 12.

2

to a treating physician's opinion.[10]  It concluded that the physician's opinion was entitled to little weight and determined that Gordon can do a limited range of sedentary work, rather than light work.[11]  Because the vocational expert also identified available sedentary work consistent with the limited sedentary RFC adopted by the Appeal Council,[12] it concluded that Gordon is not disabled and denied the application.[13]

The Appeals Council's decision is the Commissioner's final decision for the purpose of judicial review.  Gordon filed this case to challenge the decision.[14]  In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[15] This recommendation explains why substantial evidence supports the decision and why the ALJ made no

---

[10]*Id*. at p. 145.

[11]*Id*. at pp. 5.

[12]*Id*. at pp. 74-75.

[13]*Id*. at p. 7.

[14]Docket entry # 1.

[15]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

legal error.

**Gordon's allegations**.   Gordon maintains the decision is unsupported by substantial evidence for the following reasons:

> [T]he ALJ: 1) erroneously assessed Mr. Gordon's subjective allegations of daily episodes of dizziness, disorientation, and fatigue; 2) erroneously interpreted the objective medical evidence of record in concluding that it failed to demonstrate the degree of impairment arising from Mr. Gordon's neurocardiogenic syncope and its impact on his residual functional capacity, and 3) erroneously assessed the appropriate weight that should have been given to the medical opinion sources of record.  In his efforts to discredit Mr. Gordon's complaints and the opinions of his treating specialists, the ALJ substituted conjecture for any reasonable inferences that could be drawn from the evidence of record.[16]

**Applicable legal principles**.  For substantial evidence to support the decision, a reasonable mind must accept the evidence as adequate to show Gordon can do some sedentary work.  Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."[17]   Sedentary work "represents a significantly restricted range of work.  Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations."[18]  The Commissioner reduced

---

[16]Docket entry # 13, pp. 13-14.

[17]20 C.F.R. §§ 404.1567(a) & 416.967(a).

[18]SSR 96-9p, *Pol'y Interpretation Ruling Titles II & XVI: Determining Capability to Do Other Work—Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work*.

sedentary work by the following limitations: (1) the need to alternate between sitting and standing at 30 minute intervals, (2) no balancing, (3) no heights, (4), no moving machinery, and (5) no temperature extremes.  The question before the court is whether a reasonable mind would accept the evidence as adequate to show Gordon can work within these parameters.

**Whether evidence supports sedentary work**.  The Commissioner's determination about Gordon's ability to work must be supported by medical evidence; Gordon's subjective allegations are not enough to prove he is disabled.[19]  The medical evidence shows Gordon has neurocardiogenic syncope, hypertension (high blood pressure), and bradycardia (slow heartbeats).[20]  Neurocardiogenic syncope is Gordon's most limiting condition.

**Neurocardiogenic syncope**.  There are two primary reasons for syncope, or fainting: cardiac issues and neurocardiogenic syndromes.  Neurocardiogenic syncope is caused by a drop in blood pressure in response to triggers like pain, emotional distress, or prolonged standing.[21]  Neurocardiogenic syncope has three phases: (1)

---

[19]42 U.S.C. § 423 (d)(5(A); *Flynn v. Astrue*, 513 F.3d 788, 792 (8th. Cir. 2008); *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003); 20 C.F.R. §§ 404.1508 & 416.908.

[20]SSA record at p. 301.

[21]Blair P. Grubb, *Neurocardiogenic Syncope and Related Disorders of Orthostatic Intolerance*,  111 Circulation 2997, 2999 (2005); Carol Chen-Scarabelli

first, lightheadedness, nausea, perspiration, or vision changes, (2) then, a sudden loss of consciousness or fainting, and (3) finally, a post-faint phase that may include symptoms like confusion, disorientation, nausea, and dizziness.[22]

> Treatment consists of education, manoeuvres to avert syncope, drug treatment, and pacemakers.   Education, the mainstay of treatment, includes avoidance of predisposing situations (for example, dehydration, stress, alcohol consumption, extremely warm environments, tight clothing), anxiety management and coping skills, and reassurance of the patient and others that [neurocardiogenic syncope ] is a benign condition.[23]

Gordon was diagnosed with neurocardiogenic syncope in September 2009.[24] At that time, his blood pressure was uncontrolled.  His fainting spells did not resolve with drug treatment and education, so he received a pacemaker in March 2010.[25]  He

---

& Tiziano M Scarabelli, *Neurocardiogenic syncope*, 329 British Med. J. 336, 336 (2004); Carmen Ramis & Laura O'Biso Edwards, 6-24 Attorneys' Textbook of Medicine § 24.94 (3d ed.).

[22]Thomas H. Miller & Jerry E. Kruse, Evaluation of Syncope, 72 Am. Family Physician 1492, 1493 (2005); Blair P. Grubb, *Neurocardiogenic Syncope and Related Disorders of Orthostatic Intolerance*,  111 Circulation 2997, 2999 (2005); Carmen Ramis & Laura O'Biso Edwards, 6-24 Attorneys' Textbook of Medicine § 24.94 (3d ed.).

[23]Carol Chen-Scarabelli & Tiziano M Scarabelli, *Neurocardiogenic syncope*, 329 British Med. J. 336, 339 (2004).

[24]SSA record at p. 301.

[25]*Id*. at p. 375.

hasn't fainted since,[26] but he claims dizzy spells prevent him from working.

The diagnosis of neurocardiogenic syncope and Gordon's complaints of daily dizzy spells support the reduction of work to a sedentary level because prolonged standing, especially standing in warm temperatures, can cause a fainting episode.[27] A reasonable mind would accept the evidence as adequate to show Gordon can do sedentary work because sedentary work involves sitting rather than standing.  The Commissioner's limitations accommodate Gordon's complaints of dizzy spells by eliminating risk factors which could trigger a fainting episode or pose a risk of falling.

Two treating physicians opined that Gordon would likely miss more than four days of work per month,[28] but treatment notes provide no basis for believing Gordon's symptoms are that limiting.  "While the opinions of treating physicians are entitled to special weight, they do not automatically control, since the record must be evaluated as a whole."[29]  The record as a whole does not support the opinions.

According to Gordon's cardiologist, Gordon's symptoms are "much improved,"

---

[26]*Id*. at pp. 420 & 459.

[27]*See* Blair P. Grubb, *Neurocardiogenic Syncope and Related Disorders of Orthostatic Intolerance*,  111 Circulation 2997, 2999 (2005) ("It can be brought on by pain, emotional distress, or by prolonged standing (especially in very warm environments), yet many episodes occur without any specific provocation. ").

[28]SSA record at pp. 451 & 456.

[29]*Bentley v. Shalala*, 52 F.3d 784, 785-86 (8th Cir. 1995).

Gordon has not fainted since he got his pacemaker, and his blood pressure is under control.[30]  The PCP's treatment notes reflect treatment for common ailments, but documents nothing suggesting Gordon would miss work more than four times per month.[31]  When the PCP provided the opinion, he treated Gordon for congestion and a cough.[32]  There are no medical findings explaining why Gordon would miss more than four days of work.  The absence of medical findings undermined the credibility of the physicians' opinions.  The Commissioner did not err in weighing the medical opinion evidence.

In the absence of medical findings, the only basis for the treating physician opinions is Gordon's subjective complaints.  Because Gordon challenges the evaluation of his credibility,[33] the court must consider whether the ALJ had a sufficient basis for discounting Gordon's credibility.  "The ALJ may discredit a claimant based on inconsistencies in the evidence."[34]

The ALJ noted several inconsistencies in the evidence, but one inconsistency

---

[30]SSA record at p. 459.

[31]*Id*. at p. 452.

[32]*Id*.

[33]The Appeals Council adopted the ALJ's credibility findings.

[34]*Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011).

is particularly probable — the inconsistency between Gordon's allegations and driving. Neurocardiogenic syncope is "the most common cause of syncope while driving;"[35] thus, the condition "has obvious implications for personal and public safety."[36] If Gordon's symptoms are as frequent and debilitating as he claims, his cardiologist should have restricted him from driving. Gordon's cardiologist never restricted Gordon him from driving. Gordon continues to drive.[37] He engages in potentially dangerous activities like using a riding lawn mower and hunting.[38] The ALJ asked Gordon why his doctor had not restricted him from driving, but Gordon avoided the question.[39] Continuing to drive indicates Gordon's symptoms are not as serious as he claims.[40]

Gordon had not see his cardiologist in ten months at the time of his hearing, so

---

[35]Dan Sorajja, Gillian C. Nesbitt, David O. Hodge, Phillip A. Low, Stephen C. Hammill, Bernard J. Gersh & Win-Kuang Shen, *Syncope While Driving: Clinical Characteristics, Causes, and Prognosis*, 120 Circulation 928, 929 (2009).

[36]*Id*. at p. 928.

[37]SSA record at pp. 39, 60 & 228.

[38]*Id*. at pp. 227 & 229.

[39]*Id*. at p. 45.

[40]Carol Chen-Scarabelli & Tiziano M Scarabelli, *Neurocardiogenic syncope*, 329 British Med. J. 336, 340 (2004) ("Syncope is associated with considerable morbidity (including injury due to falls or motor vehicle crashes) and poses a potential danger if episodes occur during critical activity (such as participation in sport, driving, operating heavy or critical machinery).").

the ALJ held the record open for updated assessment.   When Gordon saw his cardiologist, he reported no fainting spells.  He has not progressed past the first phase of neurocardiogenic syncope since he got his pacemaker.   The cardiologist recommended no treatment changes.  The cardiologist instructed Gordon to monitor his blood pressure "as fluctuations may[ ]be the source of his persistent dizziness."[41] The updated medical evidence does not substantiate Gordon's allegations.   The absence of medical evidence showing Gordon's symptoms are as disabling as he claims, and Gordon's continued driving, provide a sufficient basis for discounting Gordon's credibility.   A reasonable mind would accept the evidence as adequate to show Gordon over-stated the severity of his symptoms.

**Vocational evidence**.   The ALJ asked a vocational expert about available sedentary work that permits a worker to sit and stand at 30 minute intervals, and requires no balancing, heights, moving machinery, or temperature extremes.[42]  These limitations exceed the limitations Gordon places on himself.  The vocational expert identified telemarketer and document preparer as representative sedentary work.[43] The vocational evidence shows work exists that Gordon can do, regardless of whether

---

[41]SSA record at p. 459.

[42]*Id*. at pp. 70-74.

[43]*Id*. at pp. 74-75. The limited range of sedentary work in the ALJ's hypothetical was consistent with the RFC adopted by the Appeals Council.

such work exists where he lives, whether a job vacancy exists, or whether he would be hired if he applied for work.[44]  Because such work exists, Gordon is not disabled under social security disability law.

**Conclusion and recommendation**.  Substantial evidence supports the ALJ's decision.  The ALJ made no legal error.  For these reasons, the undersigned magistrate judge recommends DENYING Gordon's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

It is so ordered this 27th day of June, 2014.

_____
UNITED STATES MAGISTRATE JUDGE

---

[44]42 U.S.C. § 1382c(a)(3)(B) (defining disability under social security disability law).